**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Hector ARELLANO–RIVERA,**
**Defendant–Appellant.**

**No. 00–50453.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 8, 2001

Filed April 4, 2001

As Amended on Denial of Rehearing and Rehearing En Banc May 9, 2001.

the unpaid leave as FMLA-qualifying or Rowe's status as an exempt employee.

Gregory A. Vega, U.S. Attorney, and Joseph S. Smith, Jr., Assistant U.S. Attorney, San Diego, California, for the plaintiff-appellee.

Benjamin P. Lechman, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Before: LEAVY, TROTT, and SILVERMAN, Circuit Judges.

TROTT, Circuit Judge:

# I

## Overview

Defendant–Appellant Hector Arellano–Rivera ("Arellano–Rivera") was convicted of unlawfully reentering the United States after being deported in violation of 8 U.S.C. § 1326. In this appeal, Arellano–Rivera argues that the district court erred by (1) refusing to dismiss the indictment against him on the basis of Speedy Trial Act violations; (2) precluding him from presenting evidence he claims supports a necessity defense; and (3) enhancing his sentence based on prior aggravated felony convictions.

We have jurisdiction over this timely appeal under 28 U.S.C. § 1291, and for the reasons expressed below, we AFFIRM his conviction and sentence.

# II

## Background

### A. Pre–Trial

On October 5, 1999, United States Border Patrol Agent Bernal Sanchez ("Agent Sanchez") was on duty in the hills near Andrade, California, about two miles from the United States–Mexico border. Agent Sanchez noticed some footprints on the ground and followed the prints to a group of five individuals nearby. Arellano–Rivera was among this group. Arellano–Rivera admitted that he was a citizen of Mexico and had no legal right to be in the United States. Agent Sanchez escorted Arellano–Rivera to the Border Patrol station, where he was advised of his *Miranda* rights. After waiving those rights, Arellano–Rivera again admitted that he was born in Mexico and was a citizen of that country. Another agent reviewed Arellano–Rivera's immigration records and determined that he previously had been deported from the United States.

The next day, on October 6, 1999, Arellano–Rivera was formally arrested, and a criminal complaint was filed against him alleging that he illegally reentered the United States after having been deported, a violation of 8 U.S.C. § 1326 (West 2001). A probable cause hearing for this case was scheduled for October 21, 1999.

Before the probable cause hearing, the government made the following offer: the government would drop the more serious § 1326 charge if Arellano–Rivera agreed to plead guilty to lesser charges under 8 U.S.C. § 1325 (West 2001). At the October 21, 1999 probable cause hearing, Arellano–Rivera requested and was granted a two-week continuance to consider the government's offer.

On November 4, 1999, the prosecutor, who had been led to believe that Arellano–Rivera was interested in the plea offer, filed a criminal information charging Arellano–Rivera with a misdemeanor count and a felony count of violating § 1325. Arellano–Rivera waived indictment on these § 1325 charges. On three subsequent occasions, he sought and was granted a continuance. Eventually, on January 5, 2000, Arellano–Rivera stated that he would not plead guilty to the § 1325 charges and requested additional time to consult with his attorney.

That same day, in response to Arellano–Rivera's decision to reject its plea offer, the government obtained a grand jury indictment charging him with a single felony violation of § 1326. Two days later, on January 7, 2000, the government moved to dismiss the case that had been initiated by the § 1325 information. The district court granted the government's motion to dismiss that case.

Arellano–Rivera's counsel then moved to dismiss the § 1326 indictment, claiming that the government violated the Speedy Trial Act ("STA"). *See* 18 U.S.C. § 3161 (West 2001). The STA requires that an indictment be obtained "within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." *Id.* § 3161(b). Arellano–Rivera pointed out that the initial criminal complaint charging him with violating § 1326 was filed on

October 6, 1999, but that the indictment charging him with violating § 1326 was not obtained until January 5, 2000, almost ninety days later. After briefing and oral argument, the district court denied Arellano–Rivera's motion to dismiss the indictment.

## B. Trial

On March 14, 2000, the first day of trial, Arellano–Rivera's counsel informed the court that he intended to call witnesses to support a defense of necessity based on his client's medical condition. The government objected and asked the court to preclude Arellano–Rivera from introducing such evidence. Defense counsel proffered that Arellano–Rivera suffers from an advanced case of Acquired Immune Deficiency Syndrome ("AIDS") and from other related diseases, and that he was forced to reenter the United States in order to receive treatment that is unavailable in Mexico. The district court, however, found "that Mr. Arellano's offer of proof is insufficient to support the proffered defense," and precluded him from presenting a necessity defense to the jury.

The jury convicted Arellano–Rivera of violating § 1326. After he was found guilty, Arellano–Rivera moved for acquittal and, in the alternative, for a new trial. Along with these motions, Arellano–Rivera submitted in excess of 100 pages of materials detailing the seriousness of his medical condition. The district court denied both motions.

## C. Sentencing

Before the sentencing hearing, the Probation Department recommended, among other things, that Arellano–Rivera's base offense level be increased sixteen levels because he had been deported previously following a conviction for an aggravated felony. *See* United States Sentencing Guidelines ("U.S.S.G.") § 2L1.2(b)(1)(A). Arellano–Rivera objected to the sixteen-level increase because the government had not charged in the indictment nor proved at trial that he had been previously convicted of an aggravated felony. The dis-

trict court rejected his argument. The court determined that *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), which held that prior convictions need not be proven beyond a reasonable doubt, was an exception to the constitutional rule expressed in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000), that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Accordingly, the court sentenced Arellano–Rivera to sixty months in prison.

## III

### Discussion

### A. Speedy Trial Act

Arellano–Rivera argued below and contends again on appeal that the government violated the Speedy Trial Act because (1) it did not obtain an indictment on the § 1326 charge within thirty days of his arrest, and (2) his trial did not commence within seventy days of the filing of the information. The district court rejected both contentions. "We review a district court's application of the Speedy Trial Act *de novo.*" *United States v. Ramirez–Cortez,* 213 F.3d 1149, 1153 (9th Cir.2000).

### 1. Delay in Obtaining the Indictment

The Speedy Trial Act requires the filing of an indictment or information within thirty days of a defendant's arrest or service of summons. *See* 18 U.S.C. § 3161(b); *Ramirez–Cortez,* 213 F.3d at 1153. "After this time, the government may indict on new charges, or it may abandon the original charges upon which the defendant is held, but it may not indict on the same charge for which the defendant was arrested." *United States v. Lopez–Osuna,* 242 F.3d 1191 (9th Cir.2000).

However, under the statute, certain periods of delay are excluded from the thirty-day computation. *See* 18 U.S.C. § 3161(h)(1)-(9). Most important to this

case, "[a]ny period of delay resulting from other proceedings concerning the defendant" is excludable. *Id.* § 3161(h)(1).

■ The criminal complaint charging Arellano–Rivera with violating § 1326 was filed on October 6, 1999. The STA clock started running on that date. *See United States v. Candelaria,* 704 F.2d 1129, 1131–32 (9th Cir.1983). Counting ahead thirty days, excluding the day of arrest but including weekends and holidays, *see United States v. Pollock,* 726 F.2d 1456, 1460 n. 6 (9th Cir.1984), the government was initially required to obtain an indictment charging Arellano–Rivera with violating § 1326 by November 6, 1999. The government did not obtain an indictment charging Arellano–Rivera with violating § 1326 until January 5, 2000, well after the thirty-day window prescribed by the STA. *See* 18 U.S.C. § 3161(b).

The government acknowledges that it did not obtain an indictment on the § 1326 charge within thirty days of filing the criminal complaint, but contends that a significant portion of the intervening time is excludable under the statute. According to the government, once the delay attributable to "other proceedings" is properly excluded, *see id.* § 3161(h)(1), the indictment against Arellano–Rivera was obtained within the thirty-day safe harbor. *See* 18 U.S.C. § 3161(b). We agree.

We recently decided an identical issue in *United States v. Lopez–Osuna,* 242 F.3d 1191. In that case, the government filed a criminal complaint charging Lopez–Osuna with violating 8 U.S.C. § 1326. *Id.* at 1191. As part of its "fast-track program," the government offered to drop the § 1326 charge, if Lopez–Osuna agreed to plead guilty to lesser charges under 8 U.S.C. § 1325. *Id.* Lopez–Osuna initially reacted favorably to the offer, so the prosecutor filed a criminal information charging him with violating § 1325. *Id.* at 1197. Lopez–Osuna waived indictment on the § 1325 charges, and the case initiated by the information proceeded. *Id.* On several occasions and for varying reasons, Lopez–Osuna sought and was granted a continuance. *Id.* at 1191. Eventually, he decided not to plead guilty to the § 1325 charges. *Id.* at 1195. In response, the government obtained an indictment charging Lopez–Osuna with violating § 1326 and dismissed the case initiated by the § 1325 information. *Id.*

We observed that the government clearly did not obtain the § 1326 indictment within the thirty-day time period allotted by the STA. *Id.* at 1196–97 (citing 18 U.S.C. § 3161(b)). Nevertheless, we determined that a significant portion of the intervening time was excludable. *Id.* In particular, we noted that delay resulting from trial with respect to other charges against the defendant, including the period of time utilized in making necessary preparations for trial, was excludable as delay resulting from "other proceedings" concerning the defendant. *See id.* at 1197 (citing *United States v. Lopez–Espindola,* 632 F.2d 107, 110 (9th Cir.1980) and 18 U.S.C. § 3161(h)(1)(D)). Because §§ 1325 and 1326 are separate offenses with some different elements, we concluded that the case initiated by the § 1325 information was an "other proceeding" for purposes of the STA. *Id.* Thus, "[a]ll time was excludable after Lopez waived indictment so long as the information was pending." *Id.*

Arellano–Rivera's case is indistinguishable from *Lopez–Osuna.* The government did not obtain an indictment charging Arellano–Rivera with violating § 1326 within the thirty-day period prescribed by the STA. *See* 18 U.S.C. § 3161(b). However, once Arellano–Rivera waived indictment on the § 1325 charges, the case triggered by the § 1325 information was an "other proceeding" for purposes of the STA. *See Lopez–Osuna,* 242 F.3d 1191, 1196–97. Accordingly, any delay attributable to the case initiated by the § 1325 information is excludable.[1] *See id.*

---

1. Although not a prerequisite to our holding in *Lopez–Osuna,* we observed that the case initiated by the criminal information was given a different district court docket number (99–CR–0121–J) than the case triggered by the indictment (99–CR–1961–J). *See Lopez–*

As indicated above, the government was initially required to obtain the indictment charging Arellano–Rivera under § 1326 by *November 6, 1999*. Arellano–Rivera waived indictment on the § 1325 charges and elected to proceed by way of information on *November 4, 1999*. The STA clock was tolled at that time. *See* 18 U.S.C. § 3161(h)(1)(D); *Lopez–Osuna*, 242 F.3d 1191, 1196–97. On January 5, 2000, the same day Arellano–Rivera decided not to plead guilty to the § 1325 charges, the government obtained the indictment under § 1326. Thus, all time between November 4, 1999, and January 5, 2000 is excludable under the STA. 18 U.S.C. § 3161(h)(1)(D); *Lopez–Osuna*, 242 F.3d 1191, 1196. Because the government had until January 7, 2000, to obtain an indictment under § 1326, and it did so on January 5, 2000, there was no Speedy Trial Act violation.

Arellano–Rivera attempts to distinguish his case from *Lopez–Osuna* and claims that it is more analogous to *United States v. Ramirez–Cortez*, 213 F.3d 1149, 1153 (9th Cir.2000). We respectfully disagree. *Ramirez–Cortez* concerned an entirely different provision of the STA than the provision at issue here. *Ramirez–Cortez* addressed whether certain amounts of time were excludable under the so-called "ends-of-justice" provision. *See* 18 U.S.C. § 3161(h)(8); *Ramirez–Cortez*, 213 F.3d at 1153–54. In contrast, the instant case (as well as *Lopez–Osuna*) addresses whether certain amounts of time are excludable under the "other proceedings" provision. *See* 18 U.S.C. § 3161(h)(1); *Lopez–Osuna*, 242 F.3d 1191, 1196. Moreover, in *Ramirez–Cortez*, the government never filed a separate information under either § 1325 or § 1326. *Ramirez–Cortez*, 213 F.3d at 1151–52. Nor did the defendant waive indictment on separate charges or agree to proceed with a different case by way of information. *Id.* In contrast, the prosecutor in the instant case filed a criminal information under § 1325, and Arellano–

Rivera knowingly, intelligently, and voluntarily waived indictment on those charges. As explained above, the prosecutor's filing of a criminal information on wholly separate charges, together with the defendant's willingness to proceed with the case initiated by the information, trigger the "other proceedings" exception of the STA. *See* 18 U.S.C. § 3161(h)(1)(D); *Lopez–Osuna*, 242 F.3d 1191, 1196.

Arellano–Rivera argues also that unlike the defendant in *Lopez–Osuna*, he actually informed the government that he would not accept its plea offer. Specifically, Arellano–Rivera's defense counsel claims that on November 9, 1999 (five days after waiving indictment), he unequivocally told the government that his client would not plead guilty to the charges in the § 1325 information. Arellano–Rivera asserts that the STA clock should have been reactivated on that day. Arellano–Rivera's contention is belied by the evidence in the record. On December 1, 1999—nearly a month after allegedly informing the government that his client would not plead guilty to the § 1325 charges—Arellano–Rivera's counsel asked the judge for a continuance in the case that had been triggered by the § 1325 information. Defense counsel expressly stated that he anticipated Arellano–Rivera's case to be a "disposition" (*i.e.* guilty plea). *See Lopez–Osuna*, 242 F.3d 1191 (defining "disposition hearing" as "guilty plea"). When the judge asked, "are you reasonably sure that they will dispo," counsel responded: "Yes, very sure." This is certainly not an unequivocal statement by Arellano–Rivera that he would not plead guilty to the § 1325 charges; in fact, the contrary is true. We leave for another day the issue of whether a defendant's unmistakable indication that he will not plead guilty to charges in a criminal information somehow reactivates the STA clock that had been tolled when

*Osuna*, 242 F.3d 1191, 1197. We note that the same circumstances exist here: the case initiated by the prosecutor's § 1325 information was given a different district court docket

number (99–CR–3198–K) than the case triggered by the § 1326 indictment (00–CR–0017–K).

the defendant waived indictment on those separate charges.

In sum, there is no Speedy Trial Act violation under the circumstances of this case. The goals of the STA would not be served by allowing a defendant to "game the system" by reacting favorably to a government's plea offer, waive indictment on lesser charges, and then after reneging on his part of the bargain, complain that the government failed to obtain an indictment within the appropriate time frame.

## 2. Delay in Going to Trial

The STA also requires a defendant's trial to begin within seventy days of the filing of the information or indictment. *See* 18 U.S.C. § 3161(c)(1). Once again, the statute excludes certain periods of delay, *see id.* § 3161(h)(1)-(9), including "[a]ny period of delay resulting from other proceedings concerning the defendant." *Id.* § 3161(h)(1).

Arellano–Rivera contends that his trial did not occur within the seventy-day window prescribed by the STA. *See id.* § 3161(c)(1). Specifically, he points out that the government first filed an information against him on November 4, 1999, but that his trial did not commence until March 14, 2000—approximately 131 days later. We disagree that any STA violation occurred.

■ First, Arellano–Rivera was tried and convicted of violating § 1326. The prosecutor's information charged Arellano–Rivera with the wholly separate offense of violating § 1325. The relevant charging document for purposes of the seventy-day time calculation is the grand jury indictment charging Arellano–Rivera under § 1326. The government obtained this indictment on January 5, 2000, sixty nine days before his trial began. Therefore, there was no STA violation.

Second, even if we considered the § 1325 information the relevant charging document, we would still exclude from the seventy-day time computation periods attributable to "other proceedings." *See id.* § 3161(h)(1). As discussed above, all the

time between the filing of the § 1325 information and the § 1326 indictment—from November 4, 1999, to January 5, 2000 (a total of sixty two days)—is properly excluded as delay resulting from "other proceedings." *See id.* § 3161(h)(1)(D); *Lopez–Osuna*, 242 F.3d 1191, 1196; *see generally*, Section III.A.1, *supra*. Excluding this time, Arellano–Rivera's trial commenced sixty nine days after the filing of the § 1325 information, and therefore there was no STA violation.

## B. Necessity

At trial, Arellano–Rivera sought to introduce evidence that he claimed would support a necessity defense. The district court listened to his offer of proof, and concluded that it was insufficient to establish all the elements of the defense. Accordingly, the district court precluded Arellano–Rivera from introducing to the jury evidence of a necessity defense.

"We review *de novo* the district court's decision to bar a necessity defense." *United States v. Schoon*, 971 F.2d 193, 195 (9th Cir.1991). Reviewing Arellano–Rivera's offer of proof *de novo*, we conclude that the district court acted properly.

■ A criminal defendant has the right to have a jury resolve disputed factual issues. However, "[w]here the evidence, even if believed, does not establish all of the elements of a defense, ... the trial judge need not submit the defense to the jury." *United States v. Dorrell*, 758 F.2d 427, 430 (9th Cir.1985). If the defendant's offer of proof is insufficient as a matter of law to support the proffered defense, "then the trial court should exclude the defense and the evidence offered in support." *Id.*

■ The defense of necessity is available when a person commits a particular offense to prevent an imminent harm which no available options could similarly prevent. *See id.* at 430-31. We have stated that before a defendant may present evidence of a necessity defense, his offer of proof must establish that a reason-

able jury could conclude: "(1) that he was faced with a choice of evils and chose the lesser evil; (2) that he acted to prevent imminent harm; (3) that he reasonably anticipated a causal relation between his conduct and the harm to be avoided; and (4) that there were no other legal alternatives to violating the law." *United States v. Aguilar*, 883 F.2d 662, 693 (9th Cir. 1989). If the "defendant's offer of proof is deficient with regard to any of the four elements, the district judge must grant the motion to preclude evidence of necessity." *Id.*

The parties initially dispute what materials constitute Arellano–Rivera's offer of proof. In his post-trial motions and on appeal, Arellano–Rivera submitted more than 100 pages of documents that he claims establish the four elements of necessity. The government contends that we should not consider this information because Arellano–Rivera did not offer it to the district court in his original offer of proof, and instead waited until post-trial motions to do so. *See Schoon*, 971 F.2d at 195 ("A district court may preclude a necessity defense where the evidence, *as described in the defendants offer of proof,* is insufficient as a matter of law to support the proffered defense.") (emphasis added) (internal quotation omitted). We need not decide this issue, however, because even after considering all of Arellano–Rivera's evidence, we conclude that he fails to make a colorable showing as to all four elements.

■ In particular, Arellano–Rivera failed to show that he had no legal alternatives other than illegally reentering the United States. *See Aguilar*, 883 F.2d at 693 (rejecting necessity defense because legal alternatives were available to redress defendant's immigration claim). Arellano–Rivera could have petitioned the Attorney General for temporary admission into the United States on the basis of his dire medical condition. Indeed, 8 U.S.C. § 1326(a)(2)(A) explicitly states that an alien who was previously deported may not reenter the United States, unless, among other things, "the Attorney General has

expressly consented to such alien's reapplying for admission." Petitioning the Attorney General for reentry based on an advanced AIDS condition is a viable legal alternative, an alternative Arellano–Rivera never attempted. *See United States v. Crown*, 2000 WL 709003 (S.D.N.Y.2000) (precluding defendant with AIDS from asserting necessity defense to charge of illegally reentering the United States because offer of proof failed to establish no legal alternatives); *see also United States v. Diaz–Diaz*, 198 F.3d 251 (8th Cir.1999) (unpublished) (same).

We are not unsympathetic to Arellano–Rivera's predicament. Nevertheless, he failed to avail himself of a viable legal alternative, namely petitioning the Attorney General for reentry. Arellano–Rivera's speculation, however likely, that the Attorney General would not parole a previously deported felon back into the United States on the basis of his advanced case of AIDS in no way "negate[s] the application process as a viable legal alternative." *Crown*, 2000 WL 709003, at *3 n. 2.

The district court properly precluded Arellano–Rivera from introducing evidence of the necessity defense. Because we conclude that Arellano–Rivera's offer of proof failed to establish that he had no viable legal alternative to illegally reentering the United States, we need not consider the other elements of the necessity defense. However, we do not mean to imply that necessity would have been a cognizable defense to unlawful entry even if the Attorney General had denied a request for parole. If parole is denied, an alien cannot lawfully overrule the Attorney General and parole himself as a matter of "necessity."

## C. Sentencing

■ Before sentencing, the Presentence Report recommended increasing Arellano–Rivera's base offense level sixteen levels on the basis of his prior aggravated felony. *See* U.S.S.G. § 2L1.2(b)(1)(A). Arellano–Rivera objected. He first pointed out that the government neither alleged in the indictment nor proved at trial beyond a reasonable doubt that he had prior aggravat-

ed felony convictions. Arellano–Rivera then emphasized that he never admitted to having prior aggravated felony convictions. Coupling those two facts, Arellano–Rivera claimed that the district court could not enhance his offense level on the basis of prior aggravated felonies. *See Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000) (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"). The district court rejected Arellano–Rivera's argument, reasoning that a "prior conviction is an exception in the *Apprendi* case."

Whether the district court violated the constitutional rule expressed in *Apprendi* is a question of law we review *de novo.* *See United States v. Nordby,* 225 F.3d 1053, 1058–59 (9th Cir.2000). We conclude that the district court properly sentenced Arellano–Rivera.

In order to decide this issue, we must clear some precedential underbrush. In its brief and at oral argument, the government called our attention to *United States v. Pacheco–Zepeda,* 234 F.3d 411 (9th Cir.2000), *amended by United States v. Pacheco–Zepeda,* 2000 WL 33156290 (9th Cir. Feb.8, 2001). In *Pacheco–Zepeda,* the defendant made the same argument that Arellano–Rivera makes here— *i.e.,* that a sixteen-level enhancement based on prior aggravated felonies that were neither admitted to, nor proved at trial beyond a reasonable doubt violated *Apprendi.* The first *Pacheco–Zepeda* court, under *de novo* review, concluded that "[a]lthough *Apprendi* does refer to the fact that the defendant in *Almendarez–Torres* did not challenge the accuracy of his prior convictions, nowhere does *Apprendi* limit *Almendarez–Torres* to cases where a defendant admits prior aggravated felony convictions on the record." *Pacheco–Zepeda,* 234 F.3d at 414–15.

However, after oral argument in this case had been conducted, the Ninth Circuit amended *Pacheco–Zepeda.* *See Pacheco–Zepeda,* 2000 WL 33156290, at *1. The amended opinion observed that the defendant "did not challenge the use of his prior aggravated felony convictions to enhance his sentence," and therefore the court employed the extremely deferential plain error standard of review. *Id.* Here, in contrast, Arellano–Rivera did challenge the court's use of his prior aggravated felonies to impose a sixteen-level enhancement. Accordingly, our review is *de novo,* and *Pacheco–Zepeda,* which reviewed for plain error, is not controlling.

Nevertheless, we adhere to *Pacheco–Zepeda's* twin legal conclusions that (1) *Apprendi* did not overrule *Almendarez–Torres;* and (2) "nowhere does *Apprendi* limit *Almendarez–Torres* to cases where a defendant admits prior aggravated felony convictions on the record." *Id.* at *4–5. Simply put, "[u]nder *Almendarez–Torres,* the government was not required to include [a defendant's] prior aggravated felony convictions in the indictment, submit them to a jury, or prove them beyond a reasonable doubt." *Id.* at *5.

To the extent that our previous cases have not answered this precise issue under a *de novo* standard of review, we do so here: the district court properly enhanced Arellano–Rivera's offense level on the basis of prior aggravated felonies even though he did not admit to having committed them, and even though the government neither alleged them in the indictment nor proved them at trial beyond a reasonable doubt. *Cf. id.* (coming to same conclusion under plain error review); *United States v. Parga–Rosas,* 238 F.3d 1209 (9th Cir. 2001) (coming to same conclusion without identifying scope of review); *United States v. Camarillo–Tello,* 236 F.3d 1024, 1028 (9th Cir.2001) (same).

AFFIRMED.