**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-30014 |
| Plaintiff-Appellee, | D.C. No. 2:13-cr-00310-RSL-1 |
| v. | |
| MUHAMMED ZBEIDA TILLISY, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Submitted June 13, 2017[**]
Seattle, Washington

Before: D.W. NELSON, M. SMITH, and CHRISTEN, Circuit Judges.

Muhammed Tillisy ("Tillisy") appeals his conviction and 84-month sentence

for making a false representation to a federal agency, aggravated identity theft,

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]   The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

impersonating a federal officer, mail fraud, and obtaining confidential phone records by fraud. We have jurisdiction under 28 U.S.C. § 1291, and we **AFFIRM**.

1. The district court did not err by allowing joinder of counts one through three with counts four through ten of the indictment. Applying the factors set forth in *United States v. Jawara*, 474 F.3d 565, 578 (9th Cir. 2007), the court correctly held joinder was proper because the charged offenses were of the "same or similar character," even though the elements of the offenses did not completely overlap and the two sets of counts targeted different victims. *See* Fed. R. Crim. P. 8(a).

Because the physical locations of the charged acts were the same, the indictment suggested a strong likelihood of evidentiary overlap. Additionally, Tillisy's pattern of impersonating federal officials to perpetrate fraud constituted a modus operandi. *See Marchiol v. United States*, No. CR-13-1391-PHX-SRB, 2017 WL 913599, at *7 (D. Ariz. Feb. 13, 2017) (finding a modus operandi where defendant "was motivated by a desire to conduct transactions covertly to avoid detection by government officials," explaining "[t]hat one set of transactions involved drug dealers and real estate and the other set involved bankers, [did] not alter the clear picture painted in the indictment of a mode of conducting business involving illicit and covert transactions"). Finally, the six-month time gap between the two sets of counts was not sufficiently great to weigh against joinder. *See*

*United States v. Rousseau*, 257 F.3d 925, 932–32 (9th Cir. 2001) (joinder proper where offenses were separated by over six months); *see also United States v. Akana*, 210 F. App'x 681, 682 (9th Cir. 2006) (fifteen months).

2. The district court adequately instructed the jury on Tillisy's diminished capacity theory, even though it declined to provide four clarifying instructions for each charged offense. *See United States v. Mason*, 902 F.2d 1434, 1438 (9th Cir. 1990) ("[I]t is not reversible error to reject a defendant's proposed instruction on his theory of the case if other instructions, in their entirety, adequately cover that defense theory."), *overruled in part on other grounds by Dixon v. United States*, 548 U.S. 1 (2006). The court instructed on the intent elements of each offense, and informed the jury that it "may consider evidence of the defendant's . . . diminished capacity in deciding whether the government [] proved beyond a reasonable doubt that the defendant acted with the intent required to commit the crimes," as explained in the court's prior instructions. Further, Tillisy presented his theory throughout trial and in closing argument such that the jury would have understood his argument as to why he could not have formulated the intent to defraud or deceive. *See United States v. Thomas*, 612 F.3d 1107, 1122–23 (9th Cir. 2010).

3. The district court did not err when it precluded Tillisy from presenting a necessity defense to the jury and denied his request to give a necessity instruction.

3

The evidence in support of the defense was insufficient under all four elements set forth in *United States v. Perdomo-Espana*, 522 F.3d 983, 988 (9th Cir. 2008). That Tillisy evidently disagreed with the assessment of the Harborview Medical Center doctors shows, at best, that he had a subjective but unreasonable belief that breaking the law would avert a greater evil or prevent imminent harm. *See id*. at 988–89. Additional evidence also undercuts Tillisy's contention that he acted to prevent imminent harm. Specifically, he had shunt surgery scheduled for about thirteen days before his release from federal custody in February 2012, but chose not to have the surgery. Further, there is no evidence Tillisy actually attempted to seek treatment between the time he was erroneously released from custody and his re-arrest. Tillisy also failed to show he reasonably believed he could obtain competent medical care while he was a fugitive or that his medical needs were neglected while in custody. Finally, the evidence did not show Tillisy "reasonably believed there were no other legal alternatives to violating the law." *Id.* at 988. As noted above, the Bureau of Prisons had arranged for him to have surgery before his February 2012 release, suggesting he could have had the surgery while in custody.

4. The district court abused its discretion by admitting Dr. Muscatel's testimony without making the requisite relevance and reliability findings. *See Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en

4

banc). Although "[t]he inquiry into whether testimony is sufficiently reliable is a flexible one," and "[a] separate pretrial hearing on reliability is not required," *United States v. Gadson*, 763 F.3d 1189, 1202 (9th Cir. 2014) (citations and internal quotation marks omitted), "some reliability determination must be apparent from the record before we can uphold a district court's decision to admit expert testimony," *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 (9th Cir. 2002) (alteration, citation, and internal quotation marks omitted), *as amended by* 319 F.3d 1073 (9th Cir. 2003) (order), *overruled in part on other grounds by Estate of Barabin*, 740 F.3d at 467. When the court denied the motion to exclude the testimony without explicitly assessing Dr. Muscatel's expertise or the reliability of his testimony, it failed to fulfill its gatekeeping role under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

However, given the strength of the evidence of guilt and the weakness of Tillisy's insanity defense, the admission of the expert testimony was harmless. *See Estate of Barabin*, 740 F.3d at 464. Tillisy admitted he committed the acts underlying the offenses, the government presented overwhelming evidence of guilt, and there was strong evidence that Tillisy was aware of the wrongfulness of

his acts.[1]  In particular, evidence that Tillisy took steps to conceal his crimes indicated he was aware his actions were wrong.

5. The district court did not err by increasing Tillisy's mail fraud offense level by 14 under U.S.S.G. § 2B1.1(b)(1)(H) on the ground that his "intended loss" was $1,046,452.22, the face value of the fake judgments.  According to Tillisy, because his misperception of the facts was so extensive, such that there was no chance he would receive any money from his fraud scheme, the term "intended loss" cannot reasonably apply here.  That argument is at odds with the Guidelines, which make clear that "intended loss" includes "pecuniary harm that would have been impossible or unlikely to occur."  U.S.S.G. § 2B1.1 cmt. n.3 (A)(ii).

Finally, the court did not abuse its discretion by applying the sophisticated means enhancement.  Under U.S.S.G. § 2B1.1(b)(10)(C), if the offense "involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means," the court may increase the offense level by two.  Application Note 9(B) to § 2B1.1(b)(10)(C) defines "sophisticated means" as "the especially complex or especially intricate offense conduct pertaining to the

---

[1]  A "defendant has the burden of establishing the [insanity] defense by clear and convincing evidence," and must establish: (1) "that he suffered from a serious mental disease or defect at the time of the crime," and (2) "his mental disease or defect . . . prevented him from appreciating the nature and quality or wrongfulness of his acts."  *United States v. Knott*, 894 F.2d 1119, 1121 (9th Cir. 1990).

execution or concealment of an offense." Tillisy's carefully planned schemes and coordinated conduct, including his acts to conceal the fraud, support the application of the enhancement. *See United State v. Augare*, 800 F.3d 1173, 1175–76 (9th Cir. 2015); *United States v. Tanke*, 743 F.3d 1296, 1307 (9th Cir. 2014); *United States v. Horob*, 735 F.3d 866, 872 (9th Cir. 2013) (per curiam).

**AFFIRMED**.