**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-2218 |
| *Plaintiff - Appellee*, | D.C. No. 3:23-cr-08027-MTL-1 |
| v. | |
| PHILIP ALEJANDRO POWERS III, AKA Philip Alejandro Powers III, | OPINION |
| *Defendant - Appellant*. | |

Appeal from the United States District Court
for the District of Arizona
Michael T. Liburdi, District Judge, Presiding

Argued and Submitted October 22, 2024
Phoenix, Arizona

Filed February 24, 2025

Before: Milan D. Smith, Jr., Bridget S. Bade, and Danielle
J. Forrest, Circuit Judges.

Opinion by Judge Bade

# SUMMARY[*]

## Criminal Law

The panel affirmed (1) Philip A. Powers III's convictions, following a bench trial before a magistrate judge, on seven misdemeanor counts arising from his setting three fires in national forests (the "Taylor Fire," the "Sycamore Fire," and the "Sycamore 2 Fire"); and (2) an order of restitution.

Powers argued that the magistrate judge erred in refusing to apply the necessity defense to acquit him of the charges.  A district judge affirmed the magistrate judge's conclusion that the necessity defense did not apply.

The panel held that because Powers did not show that he was facing imminent harm when he set the Taylor Fire, and because the manner in which he set the fire was objectively unreasonable, his necessity defense as to Counts 2 and 5 fails.

The panel held that because how Powers set the Sycamore Fire and his decision to leave it unattended and unextinguished were objectively unreasonable, he is not entitled to the necessity defense as to Counts 1, 3, and 6.

The panel held that because the undisputed facts do not show that Powers acted reasonably to preserve his life when he started the Sycamore 2 Fire, he is not entitled to the necessity defense as to Counts 4 and 7.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Powers did not otherwise challenge his convictions or the order of restitution.

---

## COUNSEL

Paul V. Stearns (argued), Assistant United States Attorney; Krissa M. Lanham, Appellate Division Chief; Gary M. Restaino, United States Attorney; United States Department of Justice, Office of the United States Attorney, Flagstaff, Arizona; for Plaintiff-Appellee.

Daniel L. Kaplan (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender, Federal Public Defenders Office, Phoenix, Arizona; Sarah Erlinder, Assistant Federal Public Defender, Federal Public Defenders Office, Flagstaff, Arizona; for Defendant-Appellant.

---

## OPINION

BADE, Circuit Judge

After losing the trail while hiking in northern Arizona, Defendant-Appellant Philip A. Powers III deliberately set three fires in the Prescott and Coconino National Forests. The United States Forest Service (USFS) later named these fires the "Taylor Fire," the "Sycamore Fire," and the "Sycamore 2 Fire." The Sycamore Fire spread uncontrolled over 230 acres of forest, burning timber, shrubs, and grasses, and threatening Flagstaff, Arizona and the nearby watershed. Firefighters contained the fire after approximately nine days,

and the USFS incurred $293,413.71 in recoverable fire suppression costs.

The government charged Powers with seven misdemeanor counts arising from these fires: one count of leaving a fire unattended in violation of 18 U.S.C. § 1856 (Count 1) and six counts of violating USFS regulations (Counts 2 through 7). At a bench trial before a magistrate judge, Powers admitted setting the fires but asserted that he had done so out of necessity. Powers acknowledged that he was aware of the dry conditions and fire restrictions in the forests when he set the fires, but argued that he should nonetheless be acquitted because he was out of food and water, he did not have cell phone service, his physical condition was deteriorating, and his death was imminent. Therefore, he had no choice but to set the fires to "signal" for help. The magistrate judge rejected Powers's necessity defense and found him guilty on all counts, sentenced him to supervised probation, and ordered him to pay restitution to the USFS.

In this appeal, Powers challenges his convictions and the order of restitution.[1] He argues that the magistrate judge erred in refusing to apply the necessity defense to acquit him of the charges. We have jurisdiction under 28 U.S.C. § 1291. *See United States v. Bibbins*, 637 F.3d 1087, 1090 (9th Cir. 2011). Because Powers's actions in setting the fires were objectively unreasonable, and because he was not facing imminent harm when he set the Taylor Fire, he failed to meet the requirements of the necessity defense. Accordingly, we affirm.

---

[1] Powers has fully served his term of supervised probation.

I.

A.

In May 2018, Powers began an approximately nineteen-mile hike on the Taylor Cabin Loop trail near Sedona, Arizona.[2] The trail begins in the Coconino National Forest and weaves through the high desert of the Sycamore Canyon Wilderness Area. Powers brought mandarin oranges, mangos, granola, and approximately 116 ounces of water. He also brought camping gear, including a machete, a ka-bar knife, and a lighter. He had a GPS feature on his smartphone, but he did not bring a paper map or compass. The weather was "very hot and dry," and Powers knew that there were fire restrictions in the area prohibiting any fire without a permit.

After hiking twelve to fourteen miles of the nineteen-mile loop, Powers reached Taylor Cabin. Shortly after he passed the cabin, and about ten hours into the hike, he lost the trail. He became "very frantic" because he needed to find the connecting trail to go "around the mountain"; otherwise, the only way back to the trailhead was to hike the distance he had already traveled. He had not seen anyone on the trail and was running low on water, with no means of replenishing his supply.

After hiking for about forty minutes in search of the connecting trail, Powers doubled back to Taylor Cabin, arriving near sunset. He tried to use his phone to call for

---

[2] At first, Powers believed he was on the Cabin Loop trail, an approximately eighteen-mile hike near Flagstaff that is "moderate[ly]" difficult and weaves through a pine forest. In actuality, Powers was on the Taylor Cabin Loop trail, which is "[s]trenuous[ly]" difficult.

help, but he had no signal.  He decided to stay at the cabin overnight.

### B.

Around 9:00 p.m., Powers decided to set a signal fire. There was a fire pit next to Taylor Cabin, but Powers believed that a fire in the pit would not create enough smoke to be noticed by passing planes.  Thus, he ignited a nearby patch of "dead grass mixed in with vegetation" that was "right next to [the] fire pit."  This first fire, the Taylor Fire, spread over about a tenth of an acre, burning grass, brush, and small trees, but did not attract any rescuers.  When he set the Taylor Fire, Powers had about sixteen ounces of water left, as well as some mangos, two mandarin oranges, and "dehydrated granola," in addition to jelly and coconut oil that he found in the cabin.

By the next morning, the Taylor Fire had died out. Powers finished his remaining water and began the fourteen-mile hike back to the trailhead.  The second day of hiking was "rough."  The temperature was around 100 degrees Fahrenheit.  Powers was exhausted, lacked water, and believed he "was going to die" in the wilderness.  His legs were cramping, and he felt like his body was "shutting down."  After noticing that he had stopped sweating, Powers "knew [he] was in trouble."  He resorted to drinking his own urine.

After hiking about three miles away from Taylor Cabin, Powers decided to set another fire.  He "tried to get to a spot where [he] would be easily visible," thinking that a higher "vantage point" would allow the smoke to be "easily seen from the canyon."  After searching for "dead brush that would easily ignite," "stay lit," and "cause smoke," Powers ignited a dead tree.  He did not build a fire ring, dig a fire pit,

or remove any flammable materials from the area before starting the fire.

Powers stayed with this second fire, the Sycamore Fire, for about an hour, at which point it was "still smoldering" but appeared to be dying out. Thinking that the fire had failed to signal help, Powers decided to continue hiking. He abandoned his backpack but took his car keys and cell phone. He did not extinguish the Sycamore Fire before leaving.

Powers walked a few hundred yards, with frequent breaks, and drank his urine again. He started to feel like he was "hunching over" and his feet were "slipping" as he tried to hike. About thirty minutes after leaving the Sycamore Fire, Powers saw "a low-flying helicopter," which "looped around" and left. The helicopter returned approximately thirty minutes later, and Powers began doing "everything [he] could to get its attention." Because he was dressed in camouflage, he removed his underwear, which were orange, and waved them around on a stick.[3] He also ignited a third signal fire, the Sycamore 2 Fire, which spread to a three-foot circle before dying out. As with the other two fires, Powers did not start the Sycamore 2 Fire in a fire ring or pit, nor did he clear flammable materials from the area.

## C.

The helicopter belonged to USFS, which had received reports of a wildfire. Unbeknownst to Powers, the Sycamore Fire had not died out—flying in, firefighters saw a smoke column and twenty to thirty acres of burning landscape. The

---

[3] Because he was exhausted, Powers could not remove his boots and pants, so he used a knife to cut through his pants and "rip [his underwear] off."

Sycamore Fire ultimately spread to 230 acres before it was contained.

After landing, firefighters spotted Powers lying under a tree. He was able to walk to the helicopter with the assistance of two firefighters. The helicopter crew gave him water and flew him to Sedona where he was put in an ambulance and given intravenous (IV) fluids. While in the ambulance, Powers admitted to setting the fires.

Powers was transported to an emergency medical center, where he was treated by Dr. Jeff Hardin, who diagnosed him with (1) severe dehydration, (2) rhabdomyolysis, (3) acute renal failure, (4) weakness, and (5) heat exhaustion.[4] Dr. Hardin consulted with a nephrologist, who recommended hospital admission and additional fluids. Powers was then transferred to a hospital in Cottonwood for further treatment.

## D.

Powers was charged with seven federal misdemeanors: one count of leaving a fire unattended in violation of 18 U.S.C. § 1856, three counts of building a fire in violation of federal restrictions under 36 C.F.R. § 261.52(a), and three counts of causing a fire in a national forest without a permit in violation of 36 C.F.R. § 261.5(c). During a two-day trial, Dr. Hardin testified that Powers probably would have died within 24 hours had he not been rescued; he also described Powers as "pretty ill" but "not on death's door." Powers testified that he set the three fires because he "wanted to live" and, during closing arguments, asserted the necessity defense.

---

[4] Rhabdomyolysis is a "breakdown of the muscle in the body," which releases "toxins" and can cause various health problems, including kidney damage.

The magistrate judge found Powers guilty of all counts and concluded the necessity defense did not apply for three reasons.  First, when Powers set the fires, the harm he faced was not sufficiently "imminent."  Second, Powers acted unreasonably by setting the fires in the manner that he did because he had safer alternatives that, although "*per se* illegal*,*" made his chosen conduct objectively unreasonable.  Third, Powers created the conditions underlying the necessity because he was reckless and negligent in preparing for the hike.  The magistrate judge sentenced Powers to one year of supervised probation, ordered a special assessment of $70.00, and levied stipulated restitution in the amount of $293,413.71 for the recoverable fire suppression costs.

Powers appealed this judgment to the district court, which affirmed the magistrate judge's conclusion that the necessity defense did not apply to excuse Powers's criminal conduct and entered a partial remand on grounds not relevant to this appeal.  Powers timely appealed.

## II.

We review the magistrate judge's legal conclusions de novo and her factual findings for clear error.  *United States v. Doremus*, 888 F.2d 630, 631 (9th Cir. 1989); *see also United States v. Lantis*, 17 F.4th 35, 38 (10th Cir. 2021).  Under the clear error standard, factual findings must be upheld so long as they are "plausible in light of the record viewed in its entirety." *June Med. Servs. v. Russo*, 591 U.S. 299, 301 (2020) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985)).

## III.

Before determining whether the necessity defense applies to Powers's illegal conduct of setting fires in the

National Forests, we first review and clarify the defense's requirements. "The necessity defense is an affirmative defense that removes criminal liability for violation of a criminal statute." *Raich v. Gonzales*, 500 F.3d 850, 861 (9th Cir. 2007) (citation omitted). It "traditionally covered the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils." *United States v. Bailey*, 444 U.S. 394, 410 (1980). For example, "[a]n escapee who flees from a jail that is in the process of burning to the ground" may be entitled to the defense, *id.* at 415, "for he is not to be hanged because he would not stay to be burnt," *United States v. Kirby*, 74 U.S. (7 Wall.) 482, 487 (1868); *see also United States v. Schoon*, 971 F.2d 193, 196 (9th Cir. 1991) (citing *United States v. Dorrell*, 758 F.2d 427, 432 (9th Cir. 1985)) (explaining that the necessity defense "justifies criminal acts taken to avert a greater harm, maximizing social welfare by allowing a crime to be committed where the social benefits of the crime outweigh the social costs of failing to commit the crime"), *as amended* (Aug. 4, 1992).[5]

"Because the necessity doctrine is utilitarian, however, strict requirements contain its exercise so as to prevent nonbeneficial criminal conduct." *Schoon*, 971 F.2d at 197. To prove necessity, a defendant must show "(1) that he was faced with a choice of evils and chose the lesser evil; (2) that

---

[5] In *Schoon*, we listed several examples of when the necessity defense may apply to excuse criminal conduct: "prisoners could escape a burning prison," "a person lost in the woods could steal food from a cabin to survive," "an embargo could be violated because adverse weather conditions necessitated sale of the cargo at a foreign port," "a crew could mutiny where their ship was thought to be unseaworthy," and "property could be destroyed to prevent the spread of fire." 971 F.2d at 196 (citations omitted).

he acted to prevent imminent harm; (3) that he reasonably anticipated a causal relation between his conduct and the harm to be avoided; and (4) that there were no other legal alternatives to violating the law." *United States v. Perdomo-Espana*, 522 F.3d 983, 987 (9th Cir. 2008) (quoting *United States v. Arellano-Rivera*, 244 F.3d 1119, 1125–26 (9th Cir. 2001)). All four elements must be proven by a preponderance of the evidence, and each is viewed through an objective framework. *Id.* at 987–88; *see United States v. Cruz*, 554 F.3d 840, 850 (9th Cir. 2009) (noting that a "'defendant must prove the elements of [an] affirmative defense by a preponderance of the evidence,' unless some other standard is set by statute" (quoting *United States v. Beasley*, 346 F.3d 930, 935 (9th Cir. 2003))).

Moreover, to benefit from the necessity defense, a person "must act reasonably."[6] *Perdomo-Espana*, 522 F.3d at 987–88 (applying the necessity defense and explaining that "[e]mbedded in our recognition that a person who seeks to benefit from a justification defense must act reasonably is the principle that justification defenses necessarily must be analyzed objectively"); *see also Bailey*, 444 U.S. at 410–11 (noting that "in the context of prison escape, the escapee is not entitled to claim a defense of . . . necessity unless and until he demonstrates that, given the imminence of the threat, violation of [the law] was his only reasonable alternative"); *United States v. Simpson*, 460 F.2d 515, 518 (9th Cir. 1972)

---

[6] At argument, Powers (through counsel) agreed that a person must act reasonably to invoke the necessity defense and rejected the position that a defendant could engage in *any* illegal conduct, so long as he did not have legal options. Powers offered the example that the necessity defense would not apply if he had started a signal fire by covering a portion of the forest floor with kerosine because doing so would be unnecessarily dangerous, even if it was likely to signal rescue.

(explaining that the societal benefit underlying justification defenses "is lost . . . when the person seeking to avert the anticipated harm does not act reasonably").[7]

Applying this reasonableness requirement to the third and fourth elements of the necessity defense, we have stated that "the law implies a reasonableness requirement in judging whether legal alternatives exist," *Perdomo-Espana*, 522 F.3d at 987 (quoting *Schoon*, 971 F.2d at 198), and "the defendant must '*reasonably* anticipate a causal relation between his conduct and the harm to be avoided,'" *id.* (alteration omitted) (quoting *Arellano-Rivera*, 244 F.3d at 1126).  We now clarify that the reasonableness requirement also applies to the second element: The action a defendant takes to prevent imminent harm must be reasonable.  *See Perdomo-Espana*, 522 F.3d at 987–88; *Schoon*, 971 F.2d at 197–98.

We next separately analyze each criminal act that Powers committed to determine whether the necessity defense removes criminal liability for that act.

## A.

Powers's convictions for Count 2 (setting a fire in violation of USFS regulations) and Count 5 (unlawfully causing timber, trees, brush, and grass to burn without a permit) arise from the Taylor Fire.  The magistrate judge found that Powers was not entitled to the necessity defense as to Counts 2 and 5 because he was not facing imminent harm when he set the Taylor Fire, and because his conduct in setting the fire in brush rather than in the fire pit that was

---

[7] The necessity defense is a type of justification defense.  *See United States v. Barnes*, 895 F.3d 1194, 1205 n.4 (9th Cir. 2018).

only a few feet away was objectively unreasonable.[8] We agree.

1.

"The term 'imminent harm' connotes a real emergency, a crisis involving immediate danger to oneself or to a third party." *Barnes*, 895 F.3d at 1205 (alteration omitted) (citation omitted). For example, in *Perdomo-Espana*, we held that a defendant suffering from diabetes was not facing "imminent harm" because his condition was not "immediately dire." 522 F.3d at 988. Although the defendant asserted that he had dangerously high blood sugar levels, he showed no outward signs of illness when interviewed hours later (despite receiving no medical treatment in the interim); also, a doctor characterized him as a "non-urgent" patient who needed "longer-term care." *Id.* at 985; *see also Schoon*, 971 F.2d at 197 (the necessity defense does not condone crimes committed to "thwart threats" that are "yet to be imminent"); 2 Wayne R. LaFave, *Substantive Criminal Law* § 10.1(d)(5) (3d ed. 2023) ("[U]ntil the time comes when the threatened harm is immediate, there are generally options open to the defendant, to avoid the harm, other than the option of disobeying the literal terms of the law—the rescue ship may appear, the storm may pass; and so the defendant must wait until that

---

[8] The magistrate judge also found that Powers was not entitled to the necessity defense because he acted recklessly or negligently in preparing for the hike. Neither the Supreme Court nor the Ninth Circuit has addressed whether a defendant's reckless or negligent creation of the dangerous circumstances is relevant to a viable necessity defense. Because Powers's necessity defense fails for other reasons, we do not decide that issue.

hope of survival disappears." (footnotes and citations omitted)).

The undisputed facts demonstrate that Powers was not facing imminent harm when he set the Taylor Fire. At 9:00 p.m. on the first day of his hike, Powers had food, sixteen to twenty ounces of water remaining, and a sheltered place to rest, and his phone still had power. He was not yet ill except for some muscle cramping. Although Dr. Hardin testified that muscle pain may be a symptom of rhabdomyolysis, which in turn can lead to renal failure, he did not opine that Powers was suffering from dehydration, rhabdomyolysis, acute renal failure, or any other condition at the time he set the Taylor Fire. [9] Instead, he testified about Powers's condition and treatment the following day at the medical center in Sedona. [10] In sum, Powers did not present

---

[9] Dr. Hardin also testified that rhabdomyolysis can be caused by dehydration or muscle exertion, such as from a long hike. In Powers's case, Dr. Hardin could not say if his rhabdomyolysis was caused by dehydration or exertion, but he "would pin it more on the hike."

[10] The magistrate judge found that Powers was "not yet in a life-threatening state" when he set the fires based, in part, on Dr. Hardin's testimony about Powers's condition during the medical examination in Sedona. Powers argues that the magistrate judge clearly erred by assuming that his physical condition when he set the fires was the same as his condition during the medical examination, despite evidence that he drank water and received IV fluids after setting the fires and before the examination. But the magistrate judge did not act irrationally by considering Powers's condition during the medical examination as circumstantial evidence of his condition when he started the fires. *See United States v. Khatami*, 280 F.3d 907, 910 (9th Cir. 2002) ("In reviewing the evidence, we are required to 'respect the exclusive province of the factfinder to . . . draw reasonable inferences from proven facts . . . .'" (alteration omitted) (quoting *United States v. Goode*, 814

testimony or other evidence suggesting that, when he set the Taylor Fire, he was facing a "serious or imminent risk of bodily harm at that time." *Perdomo-Espana*, 522 F.3d at 985; *see also United States v. Cervantes-Flores*, 421 F.3d 825, 829 (9th Cir. 2005) (per curiam) (concluding that defendant's HIV diagnosis did not constitute imminent harm because, although the defendant "may have a more limited life span than others," there was no evidence that the disease created "a threat of death or other serious, immediate harm"), *overruled on other grounds by Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). The magistrate judge did not err by finding that Powers was "not yet in a life-threatening state" when he set the Taylor Fire.

2.

Powers's necessity defense also fails as to the Taylor Fire counts because his actions taken to preserve his life were objectively unreasonable. Powers set the Taylor Fire by igniting a "bunch of dead grass mixed in with vegetation right next to [the] fire pit" near Taylor Cabin, and he did not clear the area or make any effort to limit its spread beforehand. The magistrate judge found that "Powers could have started the Taylor Fire in the fire ring that was only feet away from where he started the fire in the brush" and that "he could have removed flammable material to keep the fire from spreading." Moreover, Powers testified that he hoped the smoke from the Taylor Fire would attract attention, but "he acknowledged that smoke wouldn't be seen at night." Thus, his conduct in starting the Taylor Fire, at night, in the

---

F.2d 1353, 1355 (9th Cir. 1987)). And Powers does not identify any evidence from which a reasonable factfinder could infer that he was "in a life-threatening state" by 9:00 p.m. on the first day of the hike when he set the Taylor Fire.

brush a few feet away from a fire pit, was objectively unreasonable.

Powers dismisses the magistrate judge's findings that he could have taken reasonable safety precautions when setting the fires as "irrelevant" because starting any fire (even in the fire pit) would have violated the fire regulations.  He argues that only legal alternatives can render the necessity defense inapplicable, pointing to the fourth element of the defense: a lack of legal alternatives. *Perdomo-Espana*, 522 F.3d at 987 (citation omitted).  But this argument cannot be reconciled with his concessions that the necessity defense does not excuse *any* conduct and instead requires that the person invoking the defense has acted reasonably.   As he acknowledged, the necessity defense would not protect "dousing a large swath of the forest with kerosene and setting it aflame" because such conduct would be unreasonable.

This argument also ignores the first and second elements of the defense, which require that he chose the lesser evil and acted reasonably to prevent imminent harm.  *Id*. at 987–88.  And Powers does not explain how starting the Taylor Fire a few feet from a fire pit, at night, and without taking any measures to prevent it from spreading uncontrollably was objectively reasonable conduct.

Because Powers has not shown that he was facing imminent harm when he set the Taylor Fire, and because the manner in which he set the fire was objectively unreasonable, his necessity defense as to Counts 2 and 5 fails.  We therefore affirm his conviction as to those counts.

## B.

Powers's convictions on Counts 3 and 6 arise from setting the Sycamore Fire; his conviction on Count 1 arises from leaving the Sycamore Fire unattended without extinguishing it. The magistrate judge found that Powers was not entitled to the necessity defense as to Counts 1, 3, and 6 because he was not facing imminent harm when he set and then abandoned the Sycamore Fire and because his actions were objectively unreasonable. Because Powers set the Sycamore Fire many hours after he set the Taylor Fire, when he no longer had food or water and his physical condition likely deteriorated, we assume without deciding that Powers faced imminent harm when he set and abandoned the Sycamore Fire. But we agree that both how he set the Sycamore Fire and his decision to leave it unattended and unextinguished were objectively unreasonable.

The magistrate judge found that, when Powers set the Sycamore Fire, he had only illegal alternatives—he could not set a signal fire without breaking the law, and he had no legal means of attracting rescue or obtaining water or other supplies to finish the hike. But she also found that "Powers had other objectively reasonable options [with respect to] the manner in which he [chose] to start signal fires," such as clearing brush, creating a fire ring or pit, or extinguishing the Sycamore Fire before leaving it. Thus, the magistrate judge found that Powers acted in an objectively unreasonable manner by failing to take any safety precautions.

Powers again argues the magistrate judge erred by focusing on illegal alternatives, which he contends are "irrelevant to the necessity defense." But even if a defendant has only illegal options, to assert a viable necessity defense,

he must choose among those options reasonably. *See generally Perdomo-Espana*, 522 F.3d at 988 (noting that "a person who seeks to benefit from a justification defense must act reasonably"). For example, a lost hiker is not justified in burning down a cabin to stay warm if he can break into the cabin and warm himself at its fireplace, even though both actions may be *per se* illegal. In other words, the need to act to prevent a greater evil and a lack of legal alternatives does not eliminate the requirement that a defendant seeking to benefit from the necessity defense must choose a course of action that is reasonable under the circumstances. *See id.* at 987–88.

Powers also argues that the alternatives suggested by the magistrate judge are "unrealistic" because he "did not have the energy to build firefighter-quality signal fires when he acted as he did." To begin, the magistrate judge held Powers to a reasonableness standard, not a "firefighter" standard. And the magistrate judge did not clearly err by finding that Powers could have taken some precautionary measures to prevent the fire from spreading uncontrollably. Although Powers was fatigued, he climbed to "the highest vantage point [he] could see" to ignite the Sycamore Fire and continued to hike (with breaks) even after abandoning this fire. From these facts, the magistrate judge could plausibly infer that Powers had the physical ability to take steps to build a safer fire and to extinguish the smoldering tree. *See June Med. Servs.*, 591 U.S. at 301; *Khatami*, 280 F.3d at 910.

In a similar vein, Powers argues that clearing brush or building a fire enclosure would have been unreasonable because, "if the fire failed to attract rescuers," these activities would have sapped his remaining energy and "destroy[ed] any possibility of making further progress down the trail." This argument is speculative and assumes that the exertion

required for all possible safety measures would have meaningfully compromised his ability to continue hiking back to the trailhead. The magistrate judge made no such finding, and the evidentiary record does not establish that this was clear error. Thus, the argument is unavailing. *See June Med. Servs.*, 591 U.S. at 301; *see also Raich*, 500 F.3d at 872 ("The establishment of the factual elements of the [necessity] defense, if submitted, is for the jury (or other trier of fact)." (Beam, J., concurring in part and dissenting in part)).

Powers also argues that "[s]tomping out the Sycamore Fire would have ensured [his] death" because the Sycamore Fire, which spread quickly after Powers left it unextinguished, ultimately attracted rescuers. But Powers testified that he left the Sycamore Fire because he believed "it was not a sufficient fire and it was dying." He did not suggest that he made a conscious choice to leave the Sycamore Fire smoldering based on a reasonable belief that doing so would abate the threatened harm (*i.e.*, by continuing to smoke and therefore signal rescue). *See* LaFave, *supra*, § 10.1(d)(3) (explaining that, to assert a viable necessity defense, the defendant "must believe that his act is necessary to avoid the greater harm"). Thus, this argument is not supported by the record.

Finally, Powers argues that, even assuming he could have taken fire safety precautions without lowering his odds of being rescued by someone who saw smoke from his signal fires, his conduct was objectively reasonable. In his view, the magistrate judge effectively faulted him for not acting in the most "punctilious manner" possible, thereby imposing a more stringent standard than the necessity defense requires. Powers also contends that finding his actions unreasonable because he failed to take safety measures necessarily invites

critique of the effectiveness of any measures taken in future cases, which "would whittle this important [necessity] defense down to nothing." We disagree with the premise of this argument. Failing to take safety measures is different than taking measures that turn out to be ineffective. Reasonableness is a fact-bound inquiry. And our decision today says nothing about whether a defendant who undertakes ineffective preventative measures acts reasonably.

We conclude that Powers's necessity defense fails not because he failed to take the most responsible action *possible* but because he failed to act *reasonably* in seeking rescue. *See Perdomo-Espana*, 522 F.3d at 987–88. That some leeway should be given to an individual responding to a crisis does not mean that anything goes, nor does it establish that Powers's actions in setting and abandoning the Sycamore Fire were objectively reasonable. It is undisputed that he ignited a dead tree without making any effort to contain the fire's ability to spread in a hot, dry forest with no nearby water sources, and then left the still-smoldering fire unattended. The magistrate judge found that Powers reasonably had the ability to set the fire in a safer manner, and this finding is not clearly erroneous. By choosing not to take any precautions and to set the Sycamore Fire in an unnecessarily careless manner (and then abandon it, unextinguished), Powers acted unreasonably.

Because Powers failed to act reasonably with respect to the Sycamore Fire, he is not entitled to the necessity defense as to Counts 1, 3, and 6. We therefore affirm his conviction as to those counts.

C.

Likewise, Powers is not entitled to the necessity defense as to Counts 4 and 7, which arise from the Sycamore 2 Fire, because he acted in an objectively unreasonable manner.[11]

As with the Taylor Fire and the Sycamore Fire, the magistrate judge found that Powers acted in an objectively unreasonable manner by setting the Sycamore 2 Fire without taking any safety precautions. Powers argues the suggested precautions—clearing the surrounding area or creating a fire ring or pit—are unrealistic, but the magistrate judge did not clearly err by finding that Powers was capable of such alternatives. When Powers set the Sycamore 2 Fire, he could still hike (albeit only in small bursts) and was able to remove his underwear and wave it on a stick (albeit with difficulty).

Beyond challenging the magistrate judge's factual findings, Powers does not explain why his conduct with respect to the Sycamore 2 Fire was reasonable, and the evidence presented at trial about the fire's circumstances was sparse. This lack of information weighs against Powers because he has the burden to establish the elements of the necessity defense by a preponderance of the evidence. *See Cruz*, 554 F.3d at 850; *United States v. Dominguez-Mestas*, 929 F.2d 1379, 1384 (9th Cir. 1991) (per curiam).

Moreover, the undisputed facts demonstrate that Powers did not set the Sycamore 2 Fire in a reasonable manner. Before igniting it, he saw "smoke coming out over a ridge," although it is not clear whether he understood its source was the Sycamore Fire, which was only a few hundred yards away and spread quickly after he left it. He then saw the

---

[11] As with the Sycamore Fire, we assume, without deciding, that Powers faced imminent harm when he set the Sycamore 2 Fire.

helicopter for a second time and "immediately" started the Sycamore 2 Fire by lighting some nearby brush.  Although there were "materials" in the area from which "a rock ring could have been built," and despite knowing that something nearby was burning, Powers again made no effort to limit this third fire's ability to spread in the hot, dry forest.[12] Instead, the photographs admitted at trial show that the Sycamore 2 Fire was started in the middle of a larger patch of dry brush.

In sum, the undisputed facts do not show that Powers acted reasonably to preserve his life when he started the Sycamore 2 Fire.  Thus, he is not entitled to the necessity defense as to Counts 4 and 7, and we affirm his convictions as to those counts.

## IV.

Because the magistrate judge's view of the evidence was plausible and we find no error in the conclusion that the necessity defense did not excuse Powers's criminal conduct, and because Powers does not otherwise challenge his convictions or the order of restitution, we affirm.

**AFFIRMED.**

---

[12] The Sycamore 2 Fire spread to a three-foot circle, burning some "grass and brush," before dying out; Powers testified that it self-extinguished before he left on the helicopter.